Indictment for kidnapping.
Clayton, for the prosecution, stated that the offence was committed by the defendant, together with Levin Callaway and David Walton; and that the State would produce the testimony of William Clarkson, the boy kidnapped; and also of David Walton, one of the persons implicated, but not indicted.
He called William Clarkson to the stand; and his testimony was objected to, on the ground that it appeared to the court that a white person competent to give testimony, to wit: David Walton, was present.
It was answered first, that the act did not exclude the testimony of the negro where the offence was committed on his person, and the white man present was a participator in the crime; and also, second, that the negro testimony was excluded only in cases where the white person was present at, and could testify to, the corpus delicti.
They cited State vs. Jos. Johnson, in Sussex, 1822, on the first point, in which it was said that the point had been ruled after argument, that the person kidnapped was a competent witness, though an accomplice in the crime, and present at its commission, was also examined; and, as to the second point, State vs.Michael Milman, Sussex, 1838, *Page 550 
where the negro was examined though Robert Houston, a white person, was present not at, but after, the kidnapping and taking out of the State, and saw the boy in prisoner's custody in Maryland.
The Court.
The objection to the testimony of William Clarkson is founded on the general disability of negroes to give evidence against white persons, and which it is contended is not removed in this instance by the provisions of the act of assembly which only permits such evidence to be given, "where it shall appear to the court that no white person or persons competent to give testimony was or were present at the time when the fact charged is alledged to have been committed." It is contended that the case of this negro witness does not come within the terms of the act, inasmuch as David Walton, a white man, and an accomplice in the alledged offence, who is now in court, is competent to give testimony. Slaves were competent witnesses, both by the civil and the common law. But on the introduction of negro slavery into this country, it became a settled rule of law, that slaves should not be suffered to give evidence in any matter, civil or criminal, affecting the rights of a white man. As the condition, or status, of slavery could be predicated only of the negro and mulatto, their color became the badge of that status, and the rule of evidence referred to was extended to embrace all who bore that badge, whether they were slaves or free. As long as it continued for the most part to be practically true, that negroes and mulattoes were slaves, no sensible inconvenience was felt from the rule. But when a large proportion of that class of population became free, it was found to be highly inconvenient and unjust, and accordingly, in the year 1799, an act of assembly was passed which after reciting in its preamble "that great injustice and many inconveniences have heretofore arisen from free black persons and free mulattoes not being allowed to give testimony in courts of justice" provides, that "in all criminal prosecutions where it shall appear to the court before whom the prosecutions are depending, that no white person or persons competent to give testimony was or were present at the time when the fact charged is alledged to have been committed, or where such white persons, who were present have since died, or are absent from the State and cannot be produced as witnesses, any free black person or free mulatto may be admitted in the same manner, and under the same circumstances, that white persons may now be allowed to give testimony." (Digest 407.) This law being remedial must receive a *Page 551 
fair and liberal construction; such a construction as will promote its object, and not defeat it. The point made by the prisoner's counsel if sustained would result in this, that where the offence was committed byone white man, a negro might be a witness; but if committed bytwo or more white men he could not, because an accomplice is competent to give testimony. So that the act, which was intended to supply a defect in the law of criminal evidence, would be efficacious only in the case of a single culprit, and a dead letter where more than one white person was concerned in the commission of the offence; and would moreover encourage an association in guilt; a multiplication of offenders; with a view to the exclusion of the testimony of free negroes and mulattoes, who from their numbers and condition in society are most likely to be the witnesses of the ordinary crimes which disturb its security and repose. But the injustice of such a construction as is contended for, is still more apparent when the negro is himself the subject of the crime, as in the present instance. Besides, it is manifest that the act contemplated, in excluding negro testimony where a competent white witness was present, not the mere case of competency upon the part of the witness, but the sufficiency of his evidence under ordinary circumstances, to produce conviction. But although it is true that an accomplice is a competent witness, yet it is the practice of the court to direct the jury to acquit the prisoner, unless part of the accomplice's testimony is confirmed by unimpeachable evidence. (2 Russ. on Crimes 599;Smith Davis' case, 1 Leach 479.)
 Objection overruled.